UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN C. VENEKLASE, et al.,

    Plaintiffs,                                Hon. Ellen S. Carmody

v.                                            Case No. 1:09-cv-00321

BRIDGEWATER CONDOS, L.C.,

    Defendant.

_____/

# **OPINION**

Defendant is a developer of a condominium project in downtown Grand Rapids called the Riverhouse at Bridgewater Place. This is a 208 unit condominium development. Defendant established the project on March 27, 2006, by filing a Master Deed with the Kent County Register of Deeds.

On April 18, 2006, Plaintiffs entered into a purchase agreement with Defendant for the purchase of unit 79. The purchase price was $395,900.00. Plaintiffs made a cash deposit on the property of $9,877.00; executed a promissory note for $19,795.00; and had previously deposited $2,000.00 as part of a reservation agreement. In total, Plaintiffs deposited $11,877.00 in cash on the property. Plaintiffs allege that the purchase agreement did not include a property report as required by the Interstate Land Sales Full Disclosure Act 15 U.S.C. § 1701, et seq. ("ILSFDA").

Plaintiffs allege that they informed Defendant during the summer or fall of 2008 that they would no longer be able to obtain financing and would be unable to close on the property. Plaintiffs

also allege that in January or February of 2009 they spoke with Lisa Spaugh, a real estate broker for Defendant, and informed her that they would be unable to close on the property.

Plaintiffs were notified on February 24, 2009, that construction on the unit was complete and a closing was scheduled for March 19, 2009. On March 17, 2009, Plaintiffs asked Defendant to rescind their purchase agreement and refund their cash deposit and promissory note. Defendant declined Plaintiffs' request. On March 24, 2009, Plaintiffs informed Defendant that they were formally rescinding their purchase agreement and requested a refund of all deposited funds. Again, Defendant declined Plaintiffs' request.

Plaintiffs did not close on the property and filed this lawsuit on April 1, 2009, seeking rescission of their purchase agreement and a full refund of their deposit. Defendant brought a counterclaim against Plaintiffs seeking specific performance of the purchase agreement, or in the alternative, monetary damages. Defendant's counterclaim is based on state contract law. In addition to the claims arising under the ILSFDA, Plaintiffs have stated additional state law claims stemming from alleged violations of the Michigan Condominium Act, MCLA 559.101, et seq.

On February 23, 2010, unit 79 was sold to a third party.[1] The unit sold for $280,745.00. The disparity between the original purchase price and the ultimate purchase price is $115,155.00.

Presently before the Court is Plaintiffs' motion for summary judgment on their claim for recission (Dkt. 28). Defendant's response asks the Court to deny Plaintiffs' motion and to grant summary judgment in favor of Defendant (Dkt. 32).

---

[1] This was asserted by Plaintiffs and confirmed by Defendant on the record on April 12, 2010.

## ANALYSIS

I.      **The Interstate Land Sales Full Disclosure Act**

ILSFDA encompasses 20 distinct subsections of Title 15, Chapter 42. The ILSFDA is a strict liability, anti-fraud statute designed to prevent sellers from defrauding out-of-state purchasers of undeveloped home sites. *See Maguire v. Southern Homes of Palm Beach*, 591 F.Supp.2d 1263 (S.D. Fla., 2008). The statute requires developments to be registered with Housing and Urban Development (HUD) and requires that detailed property reports[2] be given to the buyers prior to signing an agreement to purchase. 15 U.S.C. § 1703(a)(1)(B). If a seller/developer fails to provide the buyer with the detailed property report as required under ILSFDA, the buyer may rescind the contract. 15 U.S.C. § 1703(c).

Recently in the wake of the real estate market upheaval, the ILSFDA appears to be used sometimes as an escape hatch for regretful buyers or for buyers unable to obtain financing in a tight credit market. Buyers have relied on the recission provision of § 1703(c) as a means to rescind their purchase agreement and obtain a refund of their deposit. Section 1703(c) provides that:

> In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been give to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right.

---

[2] A property report "is an extensive disclosure that must include such information as, inter alia, identification of interested persons; a legal description of the subdivision; a statement of the condition of title to the land; a statement of general terms and conditions (including the range of selling prices); a statement of the present condition of access to the subdivision, existence of unusual conditions relating to noise or safety, availability of sewage disposal and other public utilities, proximity to nearby municipalities, and the nature and completion schedule for proposed improvements; statements relating to any blanket encumbrances; and such other information as the Secretary of HUD might require as reasonably necessary or appropriate for protection of purchasers." *See Pigott v. Sanibel Development, LLC*, 576 F.Supp.2d 1258 (S.D. Ala. 2008) (citing 15 U.S.C. § 1705, 1707).

3

15 U.S.C. § 1703(c) (emphasis added). Section 1711(b) provides that: "[n]o action shall be maintained under section 1709 of this title to enforce a right created under subsection (b), (c), (d), or (e) of section 1703 of this title unless brought within three years after the signing of the contract or lease, notwithstanding delivery of a deed to a purchaser." 15 U.S.C. § 1711(b) (emphasis added). In dispute is the interplay between these two provisions and the disparate time limitations imposed by each.

Cases on point have reached varying conclusions. In *Taylor v. Holiday Isle, LLC*, the District Court of Alabama evaluated the interplay of §§ 1703 and 1711 in a factual situation nearly identical to the current case. See *Taylor v. Holiday Isle, LLC*, 561 F.Supp.2d 1269 (S.D. Ala., 2008). The court considered the two competing provisions and interpreted them as follows:

> Section 1703(c) provides that a purchaser must exercise revocation rights within two years. If the developer/seller refuses to honor the purchaser's timely rescission of the purchase agreement under § 1703(c), then the purchaser has a third year (pursuant to § 1711(b)) in which to file suit to enforce that right of rescission. But if the purchaser fails to rescind the contract within those first two years, as required by § 1703(c), that right of rescission is extinguished by the plain operation of that section, such that there would no longer be any § 1703(c) right to enforce via the three-year limitations period provided by § 1711(b). Stated differently, the most logical reading of these provisions, and the only one that gives effect to the disparate time limits set forth in each of them, is that a plaintiff's rescission claim requires compliance with both § 1703(c)'s two-year limit for exercising the right of rescission and § 1711(b)'s three-year limit for filing suit based on the seller's refusal to honor said rescission.

*Id.* at 1273. The *Taylor* court gave specific meaning to both §§ 1703 and 1711. The court makes clear that the right to rescind must be exercised within two years as articulated within § 1703. If the

4

developer refuses to honor the right of rescission under § 1703, § 1711 would give the buyer an additional year from which to enforce that right in court.

The court in *Jankus v. Edge Investors*, 619 F.Supp.2d 1328 (S.D. Fla. 2009) interpreted the two sections differently. *Jankus* held that the preliminary rescission notice under § 1703(c) is a "condition precedent" to bringing suit under the ILSFDA that may be waived. *Id.* at 1336. The court stated that a developer's failure to give notice of the rescission rights under § 1703 "extends the buyer's rescission period until two years after the disclosure is correctly made." *Id.* at 1337-38. If a property report is never given, § 1711 allows the buyer the full three-years from which to initiate a rescission action, notwithstanding the two year limitation period of § 1703. *Id.* The *Jankus* decision was withdrawn and superseded on Defendant's Motion for Reconsideration in *Jankus v. Edge Investors*, 650 F. Supp. 1248 (S.D. Fla. 2009). In the superseding opinion, the court did not need to and did not render a decision on the statute of limitations question.

## II.  Rescission under the ILSFDA

The Court has found no Sixth Circuit authority on point. As such, the Court will endeavor to interpret the statutes in a manner consistent with Congressional intent. *See Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) ("we will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it.")

The Court finds the analysis in *Taylor* persuasive. The decision in *Taylor* reads § 1703 in conjunction with § 1711 and harmonizes the two provisions, whereas *Jankus* utilizes § 1711 to effectively excise the time limitations imposed by § 1703 from the ILSA.[3] Therefore, this Court

---

[3] The decision in *Jankus* also effectively excises the word "signing" from the statute.

finds that § 1703 provides that notice must be given within two years from the date of *signing* the purchase agreement from which to rescind the contract. Section 1711 provides an additional third year from which to enforce the exercise of such right. The court eschews reliance on *Plant v. Merrifield Town Center Ltd. Partnership*, 2010 WL 1039875 (E.D. Va., March 8, 2010). Like the initial *Jankus* decision, the Court finds that the reasoning of *Merrifield* reads 15 U.S.C. § 1703 out of the statute. The Court is also persuaded that the "two tiered" statute of limitations makes logical sense when one considers how the typical condominium development proceeds. The developer in reliance of signed purchase agreements borrows money (or more money) to build the development. It makes sense that the statute allows a shorter period of time for the prospective purchaser to put the developer on notice if he or she wants "out" of the deal.

Applying the above rationale to the facts in the instant case, Plaintiffs had two years from the date of signing their purchase agreement from which to rescind their contract. The purchase agreement was signed on April 18, 2006, and therefore, Plaintiffs must have exercised their right to rescind the contract by April 18, 2008. Plaintiffs did not exercise their right to rescind the contract until March of 2009, thereby making their rescission untimely. Plaintiffs may not utilize § 1711 to create an additional year from which they could properly rescind their agreement, as § 1711 may only be used to enforce the previously exercised right to rescind. Therefore, the Court grants summary judgment to Defendant on Plaintiffs' claim for recission.

## III. Specific Performance

As noted, Defendant's counterclaim seeks specific performance of the Purchase Agreement. Specific performance is an equitable remedy in which the court orders a contracting party to perform completely the terms of the contract entered into. BLACK'S LAW DICTIONARY 1125 (6th ed. 1990). As an equitable remedy, specific performance is only available where a monetary remedy would be insufficient. *See Matthews v. Rodgers*, 284 U.S. 521 (1932). Despite the availability of a monetary remedy, courts have held that land is sufficiently unique to allow specific performance to be used to enforce a real estate contract. *See, In re Morris*, 260 F.3d 654 (6th Cir. 2001). However, courts cannot order specific performance for real estate in which neither of the parties holds title. Arthur Linton Corbin, CONTRACTS § 1170 (1962).

Defendant seeks specific performance of the purchase agreement. However, neither party holds title to Unit 79. Unit number 79 was sold to a third party; without either party holding legal title to the property the Court cannot order specific performance enforcing the purchase agreement as to Unit 79. Thus, Defendant's claim for specific performance is denied, and the Court will enter summary judgment thereon.

## IV. Pendent State Law Claims

In order for a federal court to entertain jurisdiction over a state law claim, the action must contain both a federal claim and a state law claim arising out of the same common nucleus of operative facts. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). *See also*, 28 U.S.C. § 1367. If however, the federal claims are dismissed from the action the federal courts may retain jurisdiction over the state law claims and may choose to entertain those claims, dismiss them,

or remand them back to the state court. *Id; see also* 28 U.S.C. § 1367(c) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it had original jurisdiction"); *Osborne v. Haley*, 549 U.S. 225, 245 (2007) ("even if only state-law claims remained after resolution of the federal question, the [d]istrict [c]ourt would have discretion, consistent with Article III, to retain jurisdiction").

The Supreme Court stated that the district courts should consider the principals of "economy, convenience, fairness, and comity" when deciding how to deal with residual state law claims. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988). The decision regarding how to proceed with the remaining state law claims remains within the discretion of the district court. *Id.* The only claims remaining are Plaintiffs' state law claims under the Michigan Condominium Act and Defendant's state law breach of contract law claims. The Court has broad discretion to entertain the state law claims, remand them to the state court, or dismiss them without prejudice. *See May v. Franklin County Commissioners*, 437 F.3d 579 (6th Cir. 2006).

The Court was made aware that there are many cases pending in the Kent County Circuit Court involving the same condominium project and the same defendant. The Court is concerned with the possibility of inconsistent results. Furthermore, "[w]here a district court exercises jurisdiction over state law claims solely by nature of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits." *Wolotsky v. Hunh*, 960 F.2d 1331, 1338 (6th Cir. 1992).

Remanding the residual state law claims to the state court is inapplicable since this case was originally filed in this court. *See First Nat. Bank of Pulaski v. Curry*, 301 F.3d 456, 458 (6th Cir. 2002) ("[A] case initiated in federal court cannot be remanded to state court."); *see also Musson*

*Theatrical, Inc., v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to the state court if the action was removed."). Since the Court cannot remand the state law claims to the state court, they will be dismissed without prejudice.

## CONCLUSION

Accordingly, Plaintiffs' motion for summary judgment on their recission claim is denied, and Defendant is granted summary judgment. Defendant's motion for summary judgment is granted insofar as Defendant is awarded Plaintiffs' cash deposit; but Defendant's motion for summary judgment on its claim for specific performance is denied and summary judgment is granted in favor of Plaintiffs. The remaining state law claims are dismissed without prejudice.

Date: May 17, 2010 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge